**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FELIX RODRIQUEZ AGUIRRE,

Defendant - Appellant.

No. 96-6318

W.D. Oklahoma

(D.C. No. CR-93-98-R)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

appeal.  See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9.  This cause is therefore ordered

submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a jury trial, Felix Rodriguez Aguirre was convicted on one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). At sentencing, the district court enhanced Aguirre's sentence for obstruction of justice pursuant to USSG §3C1.1. Aguirre's counsel has filed an Anders brief and motion to withdraw. See Anders v. California, 386 U.S. 738, 744 (1967). Counsel's brief contends that 1) there was insufficient evidence to support the verdict, and 2) the court erred in enhancing Aguirre's sentence for obstruction of justice. As provided in Anders, we furnished Aguirre with a copy of his counsel's brief so that he could "raise any points that he chooses," id., and he has filed his own pro se briefs. As his additional points, Aguirre contends that his counsel was ineffective for failing to file a timely notice of appeal and for failing to question the credibility of the witnesses against him. We affirm and grant counsel's motion to withdraw.

## BACKGROUND

On March 29, 1993, Aguirre and Oscar Heredia were passengers in a car driven by Ernesto Peyrefitte from Dallas, Texas, to Moore, Oklahoma. Peyrefitte drove to the Walmart parking lot where he met Mark Clair, a drug dealer who had been arrested by the DEA a few weeks earlier and who had become a government informant. While the parking lot meeting was proceeding, DEA agents appeared, arrested Peyrefitte, Aguirre, and Heredia, and seized a kilo of cocaine which Peyrefitte had just delivered to Clair.

Subsequently, Clair, Peyrefitte, and Heredia entered into plea agreements with the government to plead guilty to violations of federal drug laws. Although the government also offered Aguirre a plea bargain, he refused and went to trial.

Aguirre's entire trial testimony covers forty pages. Except for the brief introductory biography, his testimony concerns the reasons he was with Peyrefitte and Heredia on a three and a half hour drive from his home, transporting a kilo of cocaine which was apparently in his accordion or accordion case. Essentially, he denied any knowledge of the cocaine or involvement in the plan to deliver it. Instead, he testified Heredia had come by his house the night before the car trip, and had asked Aguirre, who is a musician, to play the accordion at a birthday party. Aguirre could not go, but he loaned Heredia the instrument. Tr. Vol. II at 225-26, 242.

According to Aguirre, the next day Heredia and Peyrefitte came by Aguirre's house in Peyrefitte's car. While Peyrefitte waited in the car, Heredia entered Aguirre's house and asked Aguirre to come with them to help him pick out a car to buy. Additionally, Aguirre believed that Heredia wished to talk to him because Heredia's wife was paying too much attention to Aguirre. Although Aguirre's wife asked him not to go, Heredia said they would only be gone an hour, so Aguirre went. Aguirre acknowledged that his accordion case was in the back seat of Peyrefitte's car, and that, rather than take it back into his house, he simply pushed it aside when he got in the car. Id. at 226-30; 243-46. He further testified that when he realized that they were driving further than he

-3-

anticipated, he became annoyed, but did not suspect anything. Finally, when they arrived at the Walmart parking lot, Peyrefitte and Heredia, who were sitting in the front seat, asked Aguirre to hand them the accordion case. Aguirre saw them take the accordion out. Although he does not dispute that the kilo of cocaine was hidden in his accordion or its case, he did not specifically see Peyrefitte and Heredia retrieve the cocaine, because he "was leaning back, like that, with my hat covering my face." Id. at 233-41; 246-51. Finally, when Peyrefitte and Heredia began to laugh, Aguirre removed his hat and noticed the kilo package. Id. at 237; 251. At that point, apparently, he did not feel he could leave.

In contrast, both Heredia and Peyrefitte testified that the three of them had planned to deliver cocaine which Aguirre supplied, and that Aguirre had insisted on going because he did not want to front the cocaine without checking out the buyer. According to their testimony, Aguirre provided a sample of the cocaine on the drive up, and Aguirre actually handed over the kilo for Peyrefitte to give to Claire once they arrived at the Walmart parking lot. Clair also confirmed that he told Peyrefitte to bring the supplier if he were reluctant to front the cocaine.

## DISCUSSION

**A. Sufficiency of the Evidence.** We review de novo the question of whether the evidence at trial was sufficient. United States v. Ivy, 83 F.3d 1266, 1284 (10th Cir.), cert.

-4-

denied, 117 S. Ct. 253 (1996).  Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government, we ask whether a reasonable jury could find the defendant guilty beyond a reasonable doubt.  Id.  We reverse only if we conclude that no reasonable jury could have reached the disputed verdict.  Id.

The argument that the evidence was insufficient has no merit.  Although Aguirre denied any involvement in the cocaine distribution, the jury chose not to believe him. Instead, the jury chose to believe the three government witnesses who admitted their roles in the drug distribution and identified Aguirre as the supplier.  We have carefully reviewed the trial record and conclude that the testimony of other key players in the distribution is more than sufficient to sustain the jury's finding that Aguirre was guilty as charged beyond a reasonable doubt.  "'To the extent the evidence conflict[ed], we [are required to] accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses.'"  United States v. Owens, 70 F.3d 1118, 1126 (10th Cir. 1995) (quoting United States v. Sapp, 53 F.3d 1100, 1103 (10th Cir.1995)).


**B.  Enhancement for Obstruction of Justice**.  We review the district court's factual finding on obstruction of justice for clear error, United States v. Hawley, 93 F.3d 682, 686 (10th Cir. 1996), and we review its interpretation of the sentencing guidelines de novo.  Id.  The Sentencing Guidelines provide for a two-point increase in the base offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or

impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG §3C1.1.

At sentencing, the district court noted its intention to adjust for perjury, subject to counsel's comments. R. Vol. I, Sentencing Tr. at 8. Defense counsel objected, noting that "[t]he defendant to this day still tells me, and I still believe him, that he's not involved in this delivery. . . . He did not deliver the cocaine. The defendant can only testify as best he knows how." Id. at 9.

In its immediate response, the district court found:

> I did hear the testimony and obviously the jury did not believe the defendant. And the stories of the defendant and the other witnesses were diametrically opposed, and I did not believe the defendant either, and I believe that perjury constitutes obstruction of justice and it's appropriate to add points for that and so I am going to add an additional two points.

Id. By couching its finding in the context of Aguirre's testimony regarding his denial of involvement in the cocaine delivery, the district court satisfied this circuit's requirement that it make an independent finding which identifies the perjured testimony.[1] See United States v. Massey, 48 F.3d 1560, 1573-74 (10th Cir. 1995). While it may have been preferable for the court to more specifically state the elements of perjury, see United States v. Dunnigan, 507 U.S. 87, 96-97 (1993), the court's statement in this case

---

[1] As noted, Aguirre's entire testimony concerned a single issue. We have frequently state that we require specificity in the district court's findings, so that we may conduct our review without speculation. See United States v. Denetclaw, 96 F.3d 454, 459 (10th Cir. 1996), cert. denied, 117 S. Ct. 1014 (1997). In this instance, there is no impediment to review.

encompasses the necessary factual predicates. That is, given the one issue nature of this trial, it is obvious that Aguirre's version of the facts was material. Further, the court's statement that neither it nor the jury believed Aguirre's testimony regarding his lack of involvement in the cocaine delivery, which testimony was "diametrically opposed" to that of the other witnesses, satisfies the requirement that the testimony be found to be intentionally false, rather than the result of confusion, mistake or faulty memory. Accordingly, we find no error in the district court's sentencing.

### C. Ineffective Assistance of Counsel.

Aguirre complains that his counsel was constitutionally ineffective in 1) failing to file a timely notice of appeal, and 2) failing to question the credibility of the witnesses against him. Ordinarily, "claims of constitutionally ineffective counsel should be brought on collateral review, in the first petition filed under 28 U.S.C. § 2255." United States v. Galloway, 56 F.3d 1239, 1242 (10th Cir.1995). However, "[s]ome rare claims which are fully developed in the record may be brought . . . on direct appeal . . . ." Id. This is such a case, and we conclude that the record is sufficient to permit full review of the alleged ineffectiveness.

To prove constitutionally ineffective assistance of counsel, Aguirre must show that his attorney's performance fell below the Sixth Amendment standard for reasonable representation, and that he was prejudiced. Strickland v. Washington, 466 U.S. 668, 687

(1984). If we determine that there was no prejudice, we need not consider whether the performance was constitutionally deficient. Id. at 697; United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993). In this case, the district court vacated Aguirre's original sentence and resentenced him, so that his counsel's notice of appeal was timely. Accordingly, Aguirre was not prejudiced by his counsel's original failure to file the notice timely, and he cannot show ineffectiveness. Moreover, we have thoroughly reviewed the record, and note that his counsel fully questioned the credibility of each of the witnesses against Aguirre. Thus, Aguirre's second claim of deficient performance is simply not supported by the facts, and he has made no other showing of ineffectiveness.

We AFFIRM and GRANT counsel's motion to withdraw.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge